**JOHN W. SWENSON & SONS, INC.,** d/b/a Perham Potato Farm, a Minnesota family farm corporation, Plaintiff,

v.

**AETNA LIFE INSURANCE COMPANY,** County Sheriff Glen M. Melby, and Deputy County Sheriff Dale Akerman, Defendants.

Civ. No. 6–83–403.

United States District Court,
D. Minnesota,
Sixth Division.

Sept. 9, 1983.

**896**

Joe A. Walters, Dorie H. Benesh, O'Connor & Hannan, Minneapolis, Minn., for plaintiff.

Elmer B. Trousdale, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for defendant Aetna Life Ins. Co.

Joseph B. Marshall, Marshall & Associates, P.A., Circle Pines, Minn., for defendants Glen M. Melby and Dale Akerman.

## MEMORANDUM INCORPORATING FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

MacLAUGHLIN, District Judge.

This matter is before the Court on the plaintiff's motion for a preliminary injunction and the defendants Glen M. Melby and Dale Akerman's motion for summary judgment.[1]  Pursuant to Federal Rule of Civil Procedure 65(a)(2), the trial on the merits was advanced and consolidated with the hearing for a preliminary injunction.  This memorandum incorporates the Court's findings of fact, conclusions of law, and order

---

1.  Melby and Akerman's motion for summary judgment, still pending at the time of this expedited trial, was converted to a motion for a directed verdict at the close of the plaintiff's case.  The Court took the motion under advisement in order to address all matters in a single written order.

for judgment as required by Federal Rule of Civil Procedure 52(a).

FACTS

This case involves a foreclosure sale on 5,842 acres of land pledged as collateral for a loan. The plaintiff alleges the sale was improperly conducted because the property was sold in gross rather than in separate tracts, thereby preventing the plaintiff from selectively redeeming individual tracts. The plaintiff seeks an order setting aside the sale and enjoining the defendants from ejecting the plaintiff from the land.

The plaintiff in this lawsuit is John W. Swenson & Sons, Inc. (Swenson), a farming corporation owned by John W. Swenson. On March 30, 1979, Swenson executed a mortgage in favor of the defendant Aetna Life Insurance Company (Aetna) on 12,772 acres of farmland in western Minnesota in order to secure a loan of $10 million from Aetna.

The 12,772 acres pledged for the original mortgage can be considered as two groups. The unirrigated or dryland tracts, approximately 6,930 acres, are scattered across an area of extreme western Minnesota measuring roughly 125 miles north to south by 35 miles east to west. The remaining 5,842 acres (the subject of this lawsuit) are clustered in a ten by seven mile area of Otter Tail County near the town of Perham, Minnesota. This land, used primarily for growing potatoes, is known as the Perham Potato Farm. The Perham Potato Farm consists of 31 irrigated fields plus another tract containing storage, washing, and packaging facilities.

The mortgage instrument signed by John W. Swenson and his wife provided that the entire 12,772 acres "have been offered to Mortgagee by Mortgagor as a single economic unit, and valued as such by the Mortgagee for the purpose of appraising the security furnished thereby." Defendant Aetna's exhibit F at 6. Paragraph 20 of the agreement also provided that Swenson

waived any right it might possess to have the land sold in separate tracts upon foreclosure. *Id.* Prior to signing the mortgage, Swenson consulted Gerald Rufer, an experienced attorney in Fergus Falls, Minnesota, and obtained an opinion letter stating that the mortgage agreement complied with all applicable Minnesota laws. Defendant Aetna's exhibit Z-14 at 2.

In March of 1980, Swenson filed for bankruptcy. In April of 1981, pursuant to a reorganization plan, Swenson entered into a workout agreement with Aetna whereby Swenson transferred title to the 6,930 dryland acres to Aetna in exchange for a reduction of Swenson's debt from $10 million to $4.5 million.[2] The Perham Potato Farm continued as security for the remainder of the debt. The workout agreement expressly provided that all the terms and conditions of the original mortgage would remain in full force and effect. Defendant Aetna's exhibit J at 9.

Swenson failed to make its semiannual, $252,000 mortgage payment due April 1, 1982 (after previously informing Aetna that it would not be able to make the payment) and Aetna instituted foreclosure by advertisement proceedings pursuant to Minn. Stat. §§ 580.01–.30. Swenson made repeated efforts to obtain financing either from Aetna or from other lenders in order to reinstate the mortgage but was unsuccessful.

Aetna scheduled a foreclosure sale of the Perham Potato Farm for June 30, 1982. Prior to the sale, an issue arose whether the Farm, identified in the mortgage documents and in the published notice of foreclosure sale as 36 different parcels, would be sold separately or in gross. Relying on paragraph 20 of the mortgage, Aetna took the position that the mortgaged property constituted a single economic unit and that Swenson had waived any right it may have had to have the property sold separately.

---

**2.** This agreement, approved by the bankruptcy court judge, also lifted the automatic stay against foreclosure which the judge had previously issued, and authorized Aetna to exercise any remedies available to it under the original mortgage, in the event of Swenson's default, without further order by the bankruptcy court.

Paragraph 20 of the Aetna mortgage provides as follows:

> The premises have been offered to Mortgagee by Mortgagor as a single economic unit, and valued as such by the Mortgagee for the purpose of appraising the security furnished thereby. Accordingly, Mortgagor hereby waives and relinquishes any and all rights which he may have to have the premises marshalled or sold in separate parcels at any foreclosure sale.

Defendant Aetna's exhibit F at 6. Swenson, on the other hand invoked Minn.Stat. § 580.08, insisting that it had an absolute right to have the property sold in separate tracts. Minn.Stat. § 580.08 provides:

> If the mortgaged premises consist of separate and distinct farms or tracts, they shall be sold separately, and no more farms or tracts shall be sold than are necessary to satisfy the amount due on such mortgage at the date of notice of such sale, with interest, taxes paid, and costs of sale.

After an exchange of several letters in which both sides disclaimed any waiver of their rights, counsel for the parties reached an understanding regarding the manner of conducting the foreclosure sale. *See* defendant Aetna's exhibits G, H, I. Counsel agreed that Swenson would first offer the property in separate tracts, then offer the property in gross, accepting the higher of the two total bids. Defendant Aetna's exhibits H at 3, I at 2. Aetna's counsel solicited suggestions from Swenson's counsel concerning how the individual parcels should be grouped for purposes of the sale, but Swenson's counsel declined to make any such suggestions.

Aetna then conducted its own analysis of the mortgaged property and concluded that the 36 parcels making up the Perham Potato Farm should be grouped into 23 tracts for purposes of the foreclosure sale. Aetna devised this grouping by combining those contiguous parcels that shared a common irrigation well and that utilized the same irrigation equipment. Failure to combine such parcels in this fashion would have greatly reduced the market value of those parcels. The final grouping arrived at by Aetna corresponded generally to the grouping used in two earlier independent appraisals of the Perham Potato Farm—one performed by an appraiser hired by Aetna and the other performed by an appraiser hired by Swenson.

■ The foreclosure sale was held at 11:00 a.m. on June 30, 1982, at the Otter Tail County Courthouse in Fergus Falls, Minnesota. Defendant Deputy Sheriff Dale Akerman presided over the sale which was attended by Thomas Manthey, an attorney representing Aetna, and approximately ten members of the public. No one representing Swenson was present at the sale even though Aetna had repeatedly advised Swenson that the sale would go forward as scheduled unless the mortgage was reinstated through payment of cash or delivery of a certified check.[3]

---

**3.** Swenson's owner John W. Swenson was in Minneapolis at the time of the sale in a last-minute effort to obtain financing in order to reinstate the mortgage. His son Paul Swenson was in Perham waiting for word from his father. The Swensons were able to obtain a loan commitment from the Thorp Financing Company on the day of the sale, but were unable to obtain the needed cash. Nevertheless, based on the loan commitment, Swenson was able to secure a temporary restraining order against the foreclosure sale from the Chief Judge of the United States District Court for the District of Minnesota. Since the temporary restraining order actually was not issued until after the sale had already taken place, the effect of the order was to prevent the sheriff from certifying the results of the sale.

Swenson alleges that Aetna lured the Swenson's away from the site of the sale by promising to accept a Thorp loan commitment in lieu of cash to reinstate the mortgage. However, after a hearing on this issue, the bankruptcy court judge explicitly held that Aetna had never agreed to accept a loan commitment in lieu of cash. The judge therefore dissolved the restraining order, permitting the sheriff to record the certificate of sale.

Under the principle of collateral estoppel, the Court is bound by the bankruptcy court's finding that Aetna did not agree to accept a loan commitment in lieu of cash to reinstate the mortgage. Even if the Court were not so bound, the weight of the evidence received at trial established that there was no such agreement.

Deputy Akerman began the sale by announcing that the property would first be offered in separate tracts. He also announced that, if at any time during the foreclosure sale, the total of the separate bids for the individual tracts equalled or exceeded the amount of Swenson's mortgage indebtedness, the highest bids for those tracts would be accepted and the sale would terminate. Finally, he announced that if the total of the separate bids did not equal or exceed the amount of the mortgage indebtedness, the property would be offered as a single unit and the highest bid for the property as a unit would be accepted. Deputy Akerman was instructed to make these announcements by Aetna's counsel, Manthey.

Deputy Akerman then offered the property in separate tracts, recording the bids on a sheet of paper. Plaintiff's exhibit 86. Aetna was the only bidder and bid a total of $2,361,500 for the 23 separate tracts. Since this was less than the amount of the mortgage indebtedness, Deputy Akerman re-offered the property as a single unit. Aetna, again the only bidder, bid $4,868,175, the exact amount of Swenson's indebtedness. Deputy Akerman accepted this bid. Accepting the bids for the 23 tracts offered separately would have resulted in a $2.5 million deficiency judgment against the Swenson corporation and against John Swenson and his wife personally.

Under Minnesota law, Swenson had a one-year right of redemption on the foreclosed property. Minn.Stat. § 580.23, subd. 2. The redemption period expired on June 30, 1983, but the parties stipulated to entry of an order restraining Aetna from disposing of the property pending the outcome of this trial. *Swenson & Sons, Inc. v. Aetna Life Insurance Co., et al.*, CIV. 6–83–403, Order (D.Minn. June 28, 1983). Since the Perham Potato Farm was sold in gross, Swenson can redeem the property only by paying the entire sale price plus interest. Minn.Stat. § 580.23, subd. 2. If the property had been sold in separate tracts, Swenson could have selectively redeemed individual tracts by paying the price bid for each tract plus interest. Now in bankruptcy,

Swenson lacks the financial resources to redeem the entire Farm. Prior to filing this lawsuit, Swenson asked Aetna for permission to redeem certain individual tracts adjacent to the City of Perham. Aetna refused.

Swenson filed this suit on April 6, 1983, nine months after the foreclosure sale. Prior to that time, neither Swenson nor its attorney had challenged or otherwise objected to the manner in which the foreclosure sale was conducted. Swenson alleges in its three-count complaint that the sale was invalid and must be set aside because the tracts offered for sale did not match the tracts described in the notice of sale, allegedly in violation of Minn.Stat. § 580.04, and because the property was sold in gross rather than in separate tracts, allegedly in violation of Minn.Stat. § 580.08. Swenson alleges it will be irreparably harmed if the sale is not set aside and a new sale by separate tracts ordered because it will be deprived of its right to selectively redeem individual tracts.

In response, Aetna contends that Minn. Stat. § 580.04 does not require that property be offered for sale in exactly the same manner as it is described in the notice of sale. Aetna further contends that Minn. Stat. § 580.08's separate sale requirement is inapplicable because the Perham Potato Farm did not consist of separate and distinct tracts. Even if section 580.08 is applicable, Aetna maintains that Swenson waived its right to separate sale and that such a waiver is enforceable. Aetna also argues that section 580.08 is merely directory, not mandatory, and that any alleged departure from the requirements of the statute was justified by the overriding need to obtain the highest and best price for the mortgaged property. Finally, Aetna asserts that Swenson's allegations of irreparable harm are spurious because Swenson has no intention of redeeming any of the property but merely seeks to delay the inevitable loss of the property while continuing to collect rent from farmers who have been

leasing the property during Swenson's redemption period.[4]

DISCUSSION

A. *Swenson's Motion to Set Aside the Sale*

1. *Regrouping of parcels.*

█ The Court can quickly dispose of Swenson's argument that the foreclosure sale is void due to a discrepancy between the tracts as described in the published notice of sale and the tracts as actually offered for sale.

Swenson bases its argument on Minn. Stat. § 580.04 which provides in relevant part:

> Each notice [of foreclosure sale] shall specify:
>
> .    .    .    .    .
>
> (4) A description of the mortgaged premises, conforming substantially to that contained in the mortgage . . . .

Section 580.04 requires only that the description of the property in the notice of sale be substantially the same as the description in the mortgage. Under this statute, Aetna had no choice but to describe the property in the notice of sale as consisting of 36 parcels because that is the way the mortgage described the property.

Prior to the sale Aetna regrouped the 36 parcels into 23 tracts. Swenson declined to participate in determining how the parcels should be grouped for sale. Defendant Aetna's exhibit I at 1. Swenson now challenges Aetna's regrouping of the parcels. For several reasons, Swenson's challenge is without merit.

First, Swenson has supplied no authority for the proposition that property must be offered for sale exactly as described in the notice of sale. The case law is to the contrary. *See Abbott v. Peck,* 35 Minn. 499, 502–03, 29 N.W. 194, 196 (1886) (notice of sale was not defective for failure to state that sale would be made in particular parcels). Second, Aetna's regrouping of parcels was reasonable under the circumstances. A sale in 36 parcels would have reduced the market value of the property by dividing land sharing common irrigation facilities. Swenson's general manager, Paul Swenson, conceded this point and also testified that, if a resale were ordered by the Court, Swenson would not want the property sold in 36 parcels. Furthermore, Aetna's regrouping of the parcels corresponded to the grouping used in two independent appraisals of the property. Third, Swenson offered no evidence in support of its claim that prospective bidders were confused by the regrouping and were consequently deterred from bidding at the sale. Deputy Akerman testified that he explained the mechanics of the sale to the prospective bidders and read off the legal descriptions of the property prior to the start of the sale.

For these reasons the Court rejects Swenson's claim that the sale is void for failure to comply with Minn.Stat. § 580.04.

2. *Applicability of Minn.Stat. § 580.08.*

Swenson's main argument is that sale of the mortgaged property in gross violated Minn.Stat. § 580.08 which requires that "[i]f the mortgaged premises consist of separate and distinct farms or tracts, they shall be sold separately . . . ."

Aetna's initial response is that section 580.08 is inapplicable because the Perham Potato Farm does not consist of "separate and distinct farms or tracts" but instead is operated as a single, integrated, economic unit.

In support of its position, Aetna relies on the mortgage agreement in which Swenson acknowledged that "[t]he premises have been offered to Mortgagee by the Mortgagor as a single economic unit, and valued as such by the Mortgagee for the purpose of appraising the security furnished thereby." Defendant Aetna's exhibit F at 6. Aetna's vice president in charge of agricultural business loans, Bobby Holman, testified that Aetna would not have made the loan to Swenson if it had been applied for on a

---

**4.** Swenson has filed a separate lawsuit asserting that it, not Aetna, is entitled to the proceeds of these leases. That action is pending in state court.

tract by tract basis. Aetna also introduced exhibits showing that Swenson held out the Perham Potato Farm as a single economic unit in advertisements and in other loan applications.

Swenson, on the other hand, introduced evidence showing that the property in question had been acquired in many separate transactions over the period 1973 to 1977. It also showed that farm records regarding irrigation, fertilizer, maintenance, and crop yields are maintained on a field by field basis, rather than for the Farm as a whole. However, the manner in which the farm records are kept is not particularly probative as even Paul Swenson conceded that the only reasonable way to keep such records is on a field by field basis.

Although Aetna's position that the mortgaged property does not consist of separate and distinct farms or tracts has considerable merit, the Court finds it unnecessary to resolve this factual dispute because the Court has concluded that Swenson validly waived whatever right it may have had to have the property sold in separate tracts.

3. *Waiver.*

■ The original mortgage agreement signed by John W. Swenson and his wife on behalf of Swenson provided that the mortgagor "waives and relinquishes any and all rights which he may have to have the premises marshalled or sold in separate parcels at any foreclosure sale." Defendant Aetna's exhibit F at 6. Swenson reaffirmed this provision on April 1, 1981, by signing the workout agreement with Aetna whereby Swenson's debt was reduced.[5]

Swenson urges the Court to refuse to enforce this express waiver for a variety of reasons. First, Swenson argues that the provision was not a bargained for term of the mortgage, but is standard language inserted by Aetna. This argument overlooks the fact that Aetna required Swenson to have the mortgage agreement reviewed and approved by a qualified attorney as a condition of making the loan. Swenson did so, and received an opinion letter stating that the mortgage agreement, including the waiver, complied with all applicable Minnesota laws. Thus, Swenson had ample opportunity to object to any illegal or disadvantageous provisions prior to entering into the agreement. Furthermore, a contract provision is not unenforceable merely because it is standard language. *See* Restatement Second of the Law of Contracts §§ 203(d), 211.

■ Second, Swenson contends that it had no power to waive section 580.08 because the statute is mandatory. This contention finds no support in the case law. Rather, the Minnesota Supreme Court has held that the statute is directory only, stating that noncompliance with the statute does not make a sale void, but only voidable for good cause shown. *Clark v. Kraker,* 51 Minn. 444, 448, 53 N.W. 706, 708 (1892); *Willard v. Finnegan,* 42 Minn. 476, 478, 44 N.W. 985, 985–86 (1890). In *Clark v. Kraker,* 51 Minn. 444, 53 N.W. 706 (1892), the court upheld a mortgagor's implied waiver of the right of separate sale. The waiver was implied from the mortgagor's failure to object to the sale of the mortgaged property in gross. Express waivers of the right of separate sale have been upheld in recent cases from other jurisdictions. *E.g., Ames v. Pardue,* 389 So.2d 927, 930 (Ala.1980); *Michigan Life Insurance Co. v. Foote,* 95 Mich.App. 399, 290 N.W.2d 158, 160 (1980). Since section 580.08 is not mandatory, Swenson had the power to consent to its waiver.[6]

---

5. Although this workout agreement contained no express waiver, it did provide that the original mortgage "shall remain in full force and effect and the Debtors herewith reaffirm their obligations to Aetna thereunder." Defendant Aetna's exhibit J at 9.

6. It is true as Swenson notes that a mortgagor cannot validly waive his or her redemption rights altogether. *O'Connor v. Schwan,* 190 Minn. 177, 179, 251 N.W. 180, 181 (1933). That principle does not control this case since Swenson did not waive its right to redeem the property, but merely waived its right to do so selectively.

Third, Swenson contends that it is incapable of waiving section 580.08 because of the effect of such a waiver on the rights of Swenson's creditors. Under Minn.Stat. § 580.24, if the mortgagor does not redeem property within one year, the mortgagor's creditors then have an opportunity to do so. Swenson contends its waiver is unenforceable because it deprives Swenson's creditors of their right to selectively redeem the property.

The Court finds no merit in this contention. Nothing in the case law even remotely suggests that section 580.08 is designed to protect the rights of third-party creditors. Significantly, none of Swenson's creditors have attempted to intervene in this lawsuit in order to protect their supposed rights. The effect that Swenson's waiver may have on third-party creditors' ability to redeem the property is no reason not to enforce the waiver against Swenson.

Fourth, Swenson argues that enforcing the waiver would contravene Minnesota's legislatively declared public policy in favor of family farms. *See* Minn.Stat. § 500.24, subd. 1. The consequence of allowing farmers such as the Swensons to waive their right of separate sale, Swenson maintains, would be the accumulation of farmland in the hands of institutional lenders because the sale of mortgaged property in gross prevents all but huge investors from bidding at auction.

Assuming *arguendo* that enforcing waivers of section 580.08 favors institutional lenders, the Court nevertheless sees no conflict with Minnesota's public policy in favor of family farms. The Minnesota Legislature has enacted limitations on corporate ownership of agricultural land. In general, no corporation may own or farm agricultural land in Minnesota. Minn.Stat. § 500.24, subd. 3. A corporation which acquires agricultural land by process of law in the collection of a debt must dispose of the land within ten years. Minn.Stat. § 500.24, subd. 3(i). During that period the land may not be used for farming unless it is leased

to a family farm unit. *Id.* These restrictions are adequate to prevent the accumulation of farmland in the hands of institutional lenders. Nothing in the statutes regulating corporate ownership of agricultural land suggests that courts should go further and invalidate provisions of mortgage agreements which arguably favor institutional lenders. Such judicial activism could actually work to the detriment of family farmers by making it more difficult for them to obtain financing.

In summary, Swenson voluntarily agreed to waive its right of separate sale by entering into the mortgage agreement. Swenson was represented by counsel and was advised that the mortgage agreement violated no applicable laws. Since Swenson knowingly and voluntarily waived its rights, and since such a waiver is neither illegal nor contrary to public policy, the Court concludes that the waiver is valid and enforceable.

The Court also finds that Aetna did not waive its contractual right to sell the property in gross. Swenson contends that Aetna waived its right in the workout agreement of April, 1981 by agreeing to take title to only the dryland acres, rather than to the entire mortgaged property, in exchange for reducing the amount of Swenson's debt. Aetna's agreement to accept less than the entire property was an accommodation designed to help Swenson out of its financial difficulties. It was not a waiver of paragraph 20 of the original mortgage agreement because paragraph 20 merely gave Aetna the right to dispose of the mortgaged property in gross; it did not *require* such disposition.

Similarly, Aetna's conduct in first offering the property in tracts at the foreclosure sale was also not a waiver of paragraph 20. Counsel for the parties had agreed upon this method of conducting the sale prior to the sale. Defendant Aetna's exhibits H, I. In the letter suggesting this procedure, counsel for Aetna stated:

Aetna's position is that the Borrower [Swenson] is bound by the provisions of paragraph 20. This letter does not constitute a waiver by Aetna of that position

. . . .

Defendant Aetna's exhibit H at 2.[7] At no time did Aetna state or imply that it was waiving its contractual right to sell the mortgaged property in gross.

4. *Reasonableness of the sale.*

■ Even if Swenson had not validly waived the provisions of Minn.Stat. § 580.-08, the Court would still not set aside the sale. In reaching this determination the Court is guided by a common sense view of what is just and equitable.

The evidence admitted at trial overwhelmingly demonstrated that the Perham Potato Farm is more valuable as a single economic unit than as separate tracts because of the efficiencies involved in large-scale potato farming. Aetna's witnesses testified that they structured the foreclosure sale in an effort to obtain the highest price for the mortgaged property. Minnesota case law supports Aetna's position that a mortgagee has the duty to obtain the highest possible price for mortgaged property upon foreclosure. *Worley v. Naylor,* 6 Minn. 123, 129–30 (1861); *see also Lalor v. McCarthy,* 24 Minn. 417, 420 (1878). Sergeant Rodney J. Otten, a 19-year veteran of the Hennepin County Sheriff's Office Civil Division and a contributing author to a manual on civil process, confirmed that the goal of any sheriff's sale is to obtain the highest price for the property. Aetna's sale of the property in gross resulted in a price of $4.8 million, not an unreasonably low price under the circumstances. Sale of the property in separate tracts would have resulted in entry of a $2.5 million deficiency judgment against Swenson and against John W. Swenson and his wife personally as guarantors. If Aetna had failed to offer

the property in gross and had instead directed Deputy Akerman to accept the bids for the individual tracts, Swenson in all likelihood would now be seeking to have the sale set aside for inadequacy of price.

■ One cannot help but feel sympathy for the Swenson family and admiration for their efforts to save their failing business. Yet judicial decisions cannot be influenced by such emotions. A careful, dispassionate consideration of all the facts and circumstances of this case leads inescapably to the conclusion that there was no defect in the foreclosure sale. Accordingly, the plaintiff's motion for injunctive relief is denied.

**B.** *Defendants Melby and Akerman's Motion for Summary Judgment*

In light of the foregoing analysis and the Court's conclusion that the foreclosure sale was not conducted improperly and need not be set aside, the Court finds it unnecessary to address the plaintiff's claims against the defendants Glen M. Melby and Dale Akerman. The plaintiff's complaint against those defendants is dismissed.

IT IS ORDERED that the plaintiff's motion for a preliminary and permanent injunction is denied and the plaintiff's complaint is dismissed as to all defendants.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

7. The reply letter from Swenson's counsel contained a similar disclaimer that Swenson was not waiving its right to separate sale by agreeing to the suggested procedure. Defendant

Aetna's exhibit I at 2. However, since Swenson had *already* waived its right of separate sale by signing the mortgage agreement, this disclaimer has no effect.