**In re Willie Ole KJELDAHL, Debtor.**

**Willie Ole KJELDAHL, Plaintiff,**

**v.**

**UNITED STATES of America and its agents, John R. Block, Secretary of Agriculture; H. Allen Brock, Deputy Administrator for Farmer Programs, Farmers Home Administrator; Russ Bjorhus, State Director for the State of Minnesota, Farmers Home Administration; Gary K. Pender, District Director, Farmers Home Administration; and John Strand, Pope County Supervisor, Farmers Home Administration, Defendants.**

Bankruptcy No. 3–82–1651.

Adv. No. 82–0420.

Civ. No. 3–82–1651.

United States District Court,
D. Minnesota,
Third Division.

Feb. 15, 1985.

Thomas Racette, Atlanta, Ga., for plaintiff.

Mary Carlson, Asst. U.S. Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

RENNER, District Judge.

Before the court are defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12 and for summary judgment pursuant to Fed.R.

Civ.P. 56. Thomas Racette appeared for plaintiff. Mary Carlson appeared for defendants.

### I. Procedural Background

On September 11, 1981 the North American State Bank of Belgrade (Bank) foreclosed its mortgage on plaintiff's farm property. Nearly one year later, on August 30, 1982, plaintiff filed for bankruptcy under Chapter 11 and commenced this adversary proceeding seeking a stay of the redemption period following the foreclosure on his real property. By order dated September 3, 1982, the bankruptcy court stayed the redemption period. On or about October 3, 1983 the government moved for declaratory judgment or for relief from the automatic stay following the Eighth Circuit Court's decision in *Johnson v. First National Bank of Montevideo*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). In response, the plaintiff moved to have this adversary proceeding transferred to the district court. The transfer took place April 13, 1984 pursuant to the bankruptcy court's order.

The crux of plaintiff's case may be found in his pretrial statement filed July 6, 1984. In that statement plaintiff made the following allegations:

1. The foreclosure sale constituted an avoidable fraudulent transfer pursuant to 11 U.S.C. § 548(a)(2).

2. The foreclosure sale was illegal under the Federal Constitution and laws.

3. The foreclosure sale was illegal under state law.

4. The United States breached its contractual obligations by failing to make additional loans to the plaintiff.

5. The United States should be equitably estopped from taking possession of the property purchased at the foreclosure sale.

6. The United States refused to make an economic emergency loan to plaintiff in violation of 7 U.S.C. § 1961.

7. The period of redemption following foreclosure under Minn.Stat. § 580.23 should be stayed in the event the foreclosure sale cannot be voided.

8. The individual defendants are personally liable for damages.

In the motion now before this court, the government asks that this adversary proceeding be dismissed for several reasons. First, the plaintiff has failed to state a claim for which relief can be granted. Second, the court lacks subject matter jurisdiction with respect to certain of plaintiff's claims. Third, the individual defendants are entitled to absolute or qualified immunity from personal liability. Finally, the government moves for summary judgment with respect to plaintiff's claim that the foreclosure sale constitutes a voidable fraudulent transfer under the federal bankruptcy law.

### II. Factual Background

Plaintiff is a farmer who lives in the St. Cloud area of Minnesota. His homestead is located on a 145 acre tract of land in Stearns County. This property was purchased in 1968 by plaintiff with a loan from the Federal Land Bank. In 1974, plaintiff bought two contiguous tracts of land in Pope County, about five miles from his home tract. The Pope County property, 290 acres, was purchased with two contracts for deed. On June 28, 1976 plaintiff completed the purchase of this property with a $43,000 loan from the Bank and a $25,000 loan from FmHA. The Bank and FmHA loans were both secured by mortgages to each lender describing both the Stearns County and Pope County property. FmHA subordinated its mortgage to the Bank.

Since 1975, plaintiff has received many loans from FmHA, all were secured by mortgages on the real property.[1] Plaintiff

---

1. In his complaint, plaintiff acknowledges the following loans: 1) June 13, 1975, an emergency disaster loan for $13,500 at 5% interest payable in six annual installments and due June 13, 1980; 2) May 14, 1976, $50,000 at 5% interest

payable in 21 annual installments; 3) June 10, 1976, $24,000 at 5% interest payable in 21 annual installments; 4) June 28, 1976, $25,000 at 5% interest payable in 41 annual installments (as noted above, this loan was made in conjunction

defaulted on his loans to FmHA and the Bank on January 1, 1978. No payments have been made on the loan since then.

Plaintiff applied for a loan with the FmHA in 1979. The loan was denied. He then pursued his right of administrative appeal to the national office, but the denial was upheld.

Plaintiff alleges that the national office of the FmHA advised him that the agency would do everything it could to try to help plaintiff preserve the home tract if he would voluntarily liquidate the Pope County property. Plaintiff states that he did place the Pope County tract up for sale and at one time had a purchaser who indicated he would make an offer which was within $5,000 of the total principal and interest of plaintiff's obligations to the FmHA and the Bank. Plaintiff further alleges that the FmHA chilled the negotiations when the FmHA told the prospective purchaser that he would have to pay the entire outstanding indebtedness before FmHA would release its lien on the property and that FmHA was considering foreclosing on the property.

In 1981, plaintiff requested a three-year moratorium for payments on his FmHA loans. That request was denied.

On July 15, 1981, the Bank started foreclosure action by serving plaintiff with notice of mortgage foreclosure sale of the entire farm by the Pope County sheriff. The Bank also published notice of the sale in the newspaper. The foreclosure sale took place on September 11, 1981 at the Pope County Courthouse. The entire 435 acres was sold to FmHA for $273,335; this amount was the principal and interest owing on the Bank's mortgage and FmHA's mortgages, plus the costs and expenses of the sale. Plaintiff was present at the courthouse the day of the sale. The sale took place between 9:00 a.m. and sunset and was attended by several neighborhood farmers, Chad Kjeldahl, the plaintiff's son, a representative from the Bank, the Bank's attorney and John Strand from the FmHA.

Prior to the sale plaintiff consulted with an attorney, Jim Gilbert, of the Meshbesher, Singer and Spence law firm. The plaintiff did not object, either in writing or verbally, to the sale of the homestead. He did not ask the sheriff to sell the Pope County, or non-homestead property first.

During the period of redemption and prior to the filing of bankruptcy on August 30, 1982, plaintiff attempted to get a loan "through some operation out of Colorado", applied for an economic emergency loan, applied for a Federal Land Bank loan, and went to four or five banks. Kjeldahl Deposition at 40–42. Apparently, plaintiff has been unable to refinance or sell the Pope County property in order to redeem his farm.

As mentioned before, the redemption period under state law would have expired September 11, 1982, twelve months following the foreclosure sale. Minn.Stat. § 580.-23. However, on September 3, 1982, the bankruptcy court entered an order staying the running of the redemption period. Since the entry of that order, plaintiff has not attempted to exercise his right of redemption. Plaintiff has leased the property to his son, Chad. The cash flow statements required to be filed by a Chapter 11 debtor with the U.S. Trustee's Office show no significant cash sales or receipts as of August 7, 1983 and from August 7, 1983 to September 16, 1984 had an accumulated positive cash flow of $2,187.31. (Affidavit of Rob Neill dated November 3, 1983 and filed with the bankruptcy court and Affidavit of John Hedback).

### III. Discussion

#### A. Validity of the Foreclosure Sale

In its moving papers defendants ask the court to dismiss plaintiff's claim regarding

with the loan from the Bank to enable plaintiff to pay off the contracts for deed on the Pope County property); 5) April 4, 1977, two emergency disaster loans, $38,500 at 8% interest and $33,000 at 5% interest payable in seven annual installments and due April 4, 1984; 6) November 9, 1977, emergency disaster loan of $18,000 at 8% interest payable in 41 annual installments.

the foreclosure sale pursuant to Fed.R. Civ.P. 12. Since matters outside the pleadings have been presented to this court the court will treat the motion as one for summary judgment.

◼ The plaintiff argues that the foreclosure sale is void for several reasons. First, the foreclosure sale was conducted by the sheriff of Pope County in violation of Minn.Stat. § 580.06. That statute provides

> The sale shall be made by the sheriff or his deputy at public vendue to the highest bidder, in the county in which the premises to be sold, or some part thereof, are situated, between nine o'clock a.m. and the setting of the sun.

The property for sale included both the Stearns County and the Pope County properties. The Pope County sheriff conducted the sale and therefore may sell all of the property as long as a portion of the property is located within his county. The sale, therefore, did comply with this statute.

◼ Second, plaintiff contends that the mortgaged property was sold as a single tract in violation of Minn.Stat. § 580.08 which provides:

> If the mortgaged premises consist of separate and distinct farms or tracts, they shall be sold separately and no more farms or tracts shall be sold than are necessary to satisfy the amount due on such mortgage at the date of notice of such sale, with interest, taxes paid, and costs of sale.

The Minnesota Supreme Court has held that this statute is not mandatory, but rather provides advisory guidance; that noncompliance with this statute does not make a sale void, but only voidable for good cause shown. *John W. Swenson & Sons, Inc. v. Aetna Life Ins. Co.*, 571 F.Supp. 895, 901 (D.Minn.1983); *Clark v. Kraker*, 51 Minn. 444, 448, 53 N.W. 706, 708 (1892); *Willard v. Finnegan*, 42 Minn. 476, 478, 44 N.W. 985, 985–86 (1890). Furthermore, because Minn.Stat. § 580.08 is not mandatory, the mortgagor may waive

his right to a separate sale. In *Clark v. Kraker*, 51 Minn. 444, 448 53 N.W. 706, 708 (1892), the waiver was implied from the mortgagor's failure to object to the sale in gross. "No excuse is shown for their neglect to object to this mode of selling. If they were present, and did not object, they would be deemed to have acquiesced." *Id.* In this case, plaintiff was notified of the sale, consulted with an attorney prior to the sale, attended the sale but did not object to the sale in gross. Moreover, he offers no excuse for his neglect in not objecting. In light of these facts, the court deems plaintiff to have acquiesced to the sale in gross and to have waived his right to a separate sale.

◼ Minn.Stat. § 582.04 provides an additional method by which a mortgagor may establish the right to have the non-homestead property sold first. The statute provides notice and filing provisions prior to the foreclosure sale. However, since plaintiff did not comply with the requirements of Minn.Stat. § 582.04, he may not now claim the protection of that statute. *See, Mulroy v. Sioux Falls Trust & Savings Bank*, 165 Minn. 295, 206 N.W. 461 (1925).

Finally, it should be noted that plaintiff does not argue that the Bank, the first mortgagee, did not have the legal right to foreclose on its mortgage. Plaintiff does not contend that the Bank did not follow the statutory requirements for foreclosure by advertisement. Minn.Stat. §§ 580.01, et seq. In conclusion, this court holds that the foreclosure sale is not void under Minnesota law.

Next, plaintiff alleges that the 1981 foreclosure sale of his property constituted a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(2), and that therefore, as a debtor-in-possession clothed with the powers of a bankruptcy trustee,[2] the foreclosure can be avoided.

11 U.S.C. § 548 provides in pertinent part:

> (a) The trustee may avoid any transfer of an interest of the debtor in property,

---

**2.** 11 U.S.C. § 1107.

or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer of obligation; and (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation \* \* \*.

There is no dispute that plaintiff/debtor was insolvent when the sale was held and that the sale occurred within one year before the date of the filing of the Chapter 11 petition.

The court must decide whether the foreclosure sale constituted a "transfer" within the meaning of the bankruptcy law and whether the sale was for a "reasonably equivalent value". The issue of whether there was a "transfer" is a question of federal law. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945). The definition of "transfer" under the bankruptcy law is found at 11 U.S.C. § 101(41): " '[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." Thus, if at the time of the mortgage foreclosure, plaintiff had an interest in the property, which he parted with, the mortgage foreclosure sale effected a transfer.

The Bankruptcy Code does not define "interest of the debtor in property"; therefore, this court must look to state law to determine the meaning of that term. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re Hulm*, 738 F.2d 323, 326 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984). In Minnesota, a mortgage of real estate does not convey legal title thereto, but creates a lien in the mortgagee's favor as security for his debt. *Romanchuk v. Plotkin*, 215 Minn. 15, 9 N.W.2d 421, 425 (1943).

■ At a foreclosure sale, the purchaser receives a vested right to become the absolute owner of the property upon expiration of the redemption period. If, however, the mortgagor exercises his statutory right of redemption, the purchaser receives the payment of the purchase price plus interest. *Johnson v. First National Bank of Montevideo, Minn.*, 719 F.2d 270, 276 (8th Cir. 1983) *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Klein*, 9 F.Supp. 57, 59 (D.Minn.1934). Thus, Kjeldahl was the legal owner of the property until foreclosure. As purchaser at the foreclosure sale, FmHA acquired the vested right to become absolute owner of the property, unless it was redeemed by one who possessed the right of redemption under the statute. Minn.Stat. §§ 580.23, 580.-24. Kjeldahl retained the statutory right of redemption. Title passed to FmHA subject to divestment by Kjeldahl exercising his right of redemption. This court holds, that under Minnesota law, the foreclosure sale involved a transfer within the broad meaning of 11 U.S.C. 101(41). *See J.I. Case Credit Corp. v. Kangas*, 46 B.R. 102 (Bankr.Minn.1985).

The government alleges that its purchase price of $273,335.00 was the reasonable equivalent value of the plaintiff's interest, especially since under Minnesota law interest continues to accrue on the debt during the plaintiff's statutory period of redemption. According to the government, its bid price represented approximately 85% of the appraised value [3]. Based on these figures, the defendants contend that this court can decide as a matter of law that the bid price is a reasonably equivalent value. *See, In re Madrid*, 725 F.2d 1197 (9th Cir.) *cert.*

---

**3.** In July 1981, the FmHA County Supervisor appraised the property at $323,000. Plaintiff strongly contests this appraisal and states that persons familiar with real estate values in that part of the state place the fair market value at $343,000–$586,000. Plaintiff himself places the fair market value at $640,000. See also Affidavit of Myron Dixon, submitted on behalf of plaintiff.

*denied* —— U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984); *In re Reinboldt*, 39 B.R. 677 (Bankr.Minn.1983) *aff'd sub nom, In re William* 39 B.R. 678 (D.Minn.1984).

The Eighth Circuit has addressed this issue in *In re Hulm*, 738 F.2d 323 (8th Cir.) *cert. denied,* —— U.S. ——, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984). In that case, the question was whether a foreclosure of a mortgage pursuant to the North Dakota statutory scheme, effected a transfer of an interest of the debtor in property within the meaning of 11 U.S.C. § 548(a) and if so, whether the price received for property at a judicial foreclosure sale provided a reasonably equivalent value for the transfer of the debtor's interest as a matter of law under 11 U.S.C. § 548(a)(2)(A). The appellate court held that a mortgage foreclosure sale under North Dakota law effects a transfer of an interest of the debtor in property. As to the second issue the court stated:

> In our view, the question of whether the sale price provided a reasonably equivalent value cannot be answered without an evidentiary hearing.

738 F.2d at 327.

■ In light of the Eighth Circuit's ruling in *Hulm,* this court finds that the issue of whether or not the judicial foreclosure sale price is a reasonably equivalent value for the property transferred must be decided after an evidentiary hearing. In this regard, defendants' motion for summary judgment will be denied and this issue remanded back to the bankruptcy court for determination.

## B. Extension of the Period of Redemption

Pursuant to Fed.R.Civ.P. 12, the government asks the court to dismiss plaintiff's claim that the period of redemption should be stayed. Once again matters outside the pleadings were presented to the court in connection with this issue. The court will treat it as a motion for summary judgment. *See* Fed.R.Civ.P. 12, 56.

■ As stated earlier, the bankruptcy court entered an order on September 3, 1982, staying the running of the redemption period. Subsequent to this order, the Eighth Circuit reversed a similar order staying the redemption period. *Johnson v. First National Bank of Montevideo,* 719 F.2d 270 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Following a thorough review of 11 U.S.C. § 105(a), the statute relied upon by the bankruptcy court, as well as 11 U.S.C. § 362, the automatic stay provision, the court concluded that

> "the Bankruptcy Court lacked authority under either § 105(a) or § 362(a), to stay indefinitely the expiration of the statutory period [and that] the only extension of time available to the debtors was that provided by the express terms of § 108(b)."

719 F.2d at 278.

Applying the reasoning of *Johnson* to this case, the redemption period expired on October 29, 1982, 60 days from the entry of the automatic stay. Thus, plaintiff has had the benefit of an additional two years during which he has retained possession of the property without payment of interest, rent or taxes.

Plaintiff responds by citing those portions of the *Johnson* opinion which imply that a court may extend the statutory period of redemption in cases where there is fraud, mistake, accident, or erroneous conduct on the part of the foreclosing officer or where the foreclosing entity or any other party was guilty of any wrongdoing which adversely affected the debtor's ability to redeem the property within the statutory period of time. 719 F.2d at 274, 275. Plaintiff argues that unlike the debtors in *Johnson,* he has alleged conduct on the part of the Bank and the FmHA which has adversely affected his ability to redeem.[4]

---

**4.** Specifically he contends that he was denied economic emergency loans in 1979 which would have helped him to pay his obligations to the Bank; that he attempted to apply for a moratorium under 7 U.S.C. § 1981a which would have helped him and prevented FmHA from directing the Bank into a foreclosure position; that he applied for economic emergency

In support of these contentions, plaintiff relies on his complaint, deposition and affidavit. His affidavit essentially restates the allegation in his complaint.

In *Lyons v. Board of Education of Charleston*, 523 F.2d 340 (8th Cir.1975) the Eighth Circuit considered the question of when summary judgment may be granted. In that case a black school teacher was not rehired. She sued the school board alleging that she had been discriminated against on the basis of her race. When asked to state the factual basis for her claims of discrimination, she answered: " 'Well, I am basing it strictly on the atmosphere of the community in which the school district is located and the people that are within the school system.' " 523 F.2d at 343. Defendants moved for summary judgment. Plaintiff opposed the motion, urging the court to take the allegations of her complaint at face value and asserting that they raised substantial disputes of fact. The Eighth Circuit stated that the party opposing the motion cannot rest on his allegations but must present factual material which raises substantial questions which would render summary judgment inappropriate. 523 F.2d at 347. In *Lyons*, the appellate court upheld the district court's granting of summary judgment.

■ In this case, plaintiff also rests on the allegations contained in his complaint and their restatement in his affidavit and deposition. For example, he alleges that the FmHA directed the Bank to foreclose in order to avoid the due process requirements of the constitution and federal laws. Like the plaintiff in *Lyons*, he supports this allegation by claiming that "the timing involved" forms the basis for this contention. Kjeldahl Deposition at 54, line 20. Plaintiff also alleges that the FmHA chilled a potential sale. However, he does not present an affidavit from the potential buyer to support these allegations. He may not rest upon his own bald assertions.

Plaintiff's unsupported allegations do not suggest fraud, mistake, accident, erroneous conduct on the part of the foreclosing officer, or that the Bank or FmHA was guilty of any wrongdoing which adversely affected the debtor's ability to redeem the property which would allow the court to extend the statutory period of redemption.

In the absence of these factors, listed in *Johnson*, the bankruptcy court should not have extended the period of redemption. At the very most, the redemption period could have been extended to October 29, 1982 under 11 U.S.C. § 108(b). After that time, the Minnesota statutory scheme worked to automatically convey to FmHA "all the right, title, and interest of the mortgagor in and to the premises named therein at the date of such mortgage, without any other conveyance." Minn.Stat. § 580.12. In light of the foregoing, the stay of the bankruptcy court is dissolved.

C. Application of *Coleman v. Block*, 580 F.Supp. 194 (D.N.D.1984) and Violations of Due Process by FmHA

Next plaintiff asserts that the precepts enunciated in *Coleman v. Block*, 580 F.Supp. 194 (D.N.D.1984) prohibit FmHA from acquiring the property of its borrowers before a moratorium opportunity under 7 U.S.C. § 1981a is furnished to plaintiff. Plaintiff further contends that the FmHA directed the Bank to foreclose upon plaintiff's property and that a factual dispute remains regarding the issue of whether the Bank acted as the alter ego of FmHA thus subjecting FmHA to possible due process violations.

■ First, the court notes that the foreclosure action at issue in this suit was

---

loan again in 1981 but was turned down; that his avenues of appeal were cut off by the FmHA because it contended that the program under which plaintiff applied had been discontinued; that the Government and defendant Block improperly did not continue the economic emergency loan program which would have come into effect immediately after the aforemen-

tioned program and for which plaintiff's loan application on appeal should have been continued to be processed; that the FmHA county supervisor worked to chill the sale of the Pope County property; that FmHA directed the Bank to foreclose; and that FmHA used the Bank to foreclose in order to avoid plaintiff's due process rights if FmHA had foreclosed directly.

commenced by the Bank, a non-federal lending institution. Nothing in 7 U.S.C. § 1981a mandates that private lending institution grant a moratorium opportunity to a defaulting borrower. Second, fifth amendment due process guarantees do not apply to private action. The standard for finding federal government action under the fifth amendment is whether there exists "a sufficiently close nexus between the [government] and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the [government] itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

 Once again, plaintiff relies on his conclusory assertions that because of the timing involved, FmHA forced the Bank to foreclose. He has not presented this court with any factual evidence to support his beliefs that a conspiracy existed between the Bank and FmHA. Some courts have held that a complaint containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights may be dismissed. *See e.g., Ostrer v. Aronwald,* 567 F.2d 551 (2d Cir. 1977); *Kadar Corp. v. Milbury,* 549 F.2d 230 (1st Cir.1977). This court holds that the foreclosure by the Bank was private action, and thus not within the ambit of the fifth amendment. Therefore, the plaintiff was not denied his due process rights and this portion of the complaint will be dismissed.

 Furthermore, this court finds that the *Coleman* injunction case does not apply to the foreclosure in this case. In *Coleman,* the court enjoined FmHA from foreclosing on its loans without first providing the borrower with notice and opportunity to be heard under 7 U.S.C. § 1981a. Here, the Bank, not the FmHA foreclosed on its loan. Nothing in 7 U.S.C. § 1981a precludes FmHA from protecting its legal rights as a junior lienholder at a foreclosure sale instituted by a private party. The Coleman court recognized that "[w]hen FmHA is in the position of junior lienholder, it will have the option of either bidding at the sale or asserting its right of redemption." 580 F.Supp. at 209, n. 55. This court holds that the *Coleman* injunction does not apply to the facts of this case and that FmHA may take title to the property. Moreover, plaintiff's contention that FmHA should be equitably estopped from taking possession of the property is also unsupported by the facts and the law of this case.

### D. Breach of Contractual Obligations to Make Loans to Plaintiff

Plaintiff alleges that the statutes and regulations of the farmers loan program create a right in the borrower to expect a continuation of FmHA's assistance to avoid liquidation, notwithstanding the failure of the borrower to pay back his loans, when the delinquency is caused by problems beyond the control of the borrower. Plaintiff alleges that FmHA did not follow its regulations, which were part of the contract terms of its promissory notes with plaintiff and that compliance with the contract terms is mandatory not discretionary. Plaintiff contends that FmHA's denial of his loan requests was a breach of contract.

 The court disagrees. The decision to deny a loan is an agency action committed to agency discretion by law which precludes judicial review under 5 U.S.C. § 701(a)(2). *Tuepker v. Farmers Home Administration,* 538 F.Supp. 375 (W.D.Mo. 1982), *aff'd,* 708 F.2d 1329 (8th Cir.1983). In *Tuepker,* plaintiff sought judicial review of FmHA's decision to deny an economic emergency loan. The Eighth Circuit held that each of the contested determinations was a "qualitative, subjective decision based on agency expertise within the bounds of the statutory directive to make loans to those applicants who have the 'resources necessary to assure a reasonable prospect for successful operation with the assistance of such loan.'" 708 F.2d at 1332. *See also Dahl v. United States,* 695 F.2d 1373 (C.A.Fed.1982) (plaintiff claimed an abuse of discretion for FmHA's refusal to release loan funds, but court held that FmHA official did not abuse his discretion or breach any contract in refusing to disburse funds to the plaintiff.)

In this case, FmHA officials were familiar with plaintiff's repayment ability based upon a loan servicing history from 1975. Plaintiff first defaulted on his loans in 1978. He has not paid anything since then. The determination of whether plaintiff should be granted a loan is clearly based on qualitative and subjective decisions which are within the agency's expertise. This court holds that FmHA did not breach any contractual obligation owed to plaintiff in refusing to grant him loans. This part of plaintiff's complaint should be dismissed for failure to state a claim.

Plaintiff also alleges that FmHA chilled the sale of the Pope County property. If a cause of action does exist it would sound in tort. The Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2671 et seq., defines the conditions of Congress' waiver of sovereign immunity for actions sounding in tort. In this case plaintiff has failed to follow the statutory procedures and file an administrative claim for a sum certain with the responsible agency within the 2 years provided in the statute. 28 U.S.C. § 2401(b) and § 2675(a); 28 C.F.R. 142. In this circuit, the filing of an administrative claim is an absolute jurisdictional prerequisite to maintaining a tort action in federal district court. *Smith v. United States*, 588 F.2d 1209 (8th Cir.1978); *Bor-Son Building Corp. v. Heller*, 572 F.2d 174 (8th Cir.1978); *Melo v. United States*, 505 F.2d 1026 (8th Cir.1974); *Meeker v. United States*, 435 F.2d 1219 (8th Cir.1970).

Plaintiff has failed to follow the statutory procedures, thus this court lacks jurisdiction to hear this portion of plaintiff's complaint and it must be dismissed.

### E. The Individual Defendants

Plaintiff seeks to hold the individual defendants personally liable for damages arising out of denying plaintiff a moratorium under 7 U.S.C. § 1981a, denying further FmHA operating loans, colluding with the Bank to foreclose in derogation of plaintiff's due process rights, not following the directives of the national office to help plaintiff keep his homestead, chilling and

prohibiting the sale of one parcel of the real property to satisfy FmHA's claims against the plaintiff. The individual defendants contend that they are entitled to either absolute or qualified immunity for their acts.

Because the court has concluded that the portions of the plaintiff's complaint relating to these actions must be dismissed, the court need not reach the issue of the individual defendants liability.

Based on the foregoing, the briefs and arguments of counsel, the record and the file

IT IS HEREBY ORDERED that plaintiff's complaint be dismissed except as it relates to the price paid at the foreclosure sale.

IT IS HEREBY ORDERED that the Clerk of Court enter judgment accordingly.

With regard to the remaining issue IT IS ORDERED that the question of whether the bid price of $273,335.00 was a reasonably equivalent value be remanded to the bankruptcy court for an evidentiary hearing.

IT IS FURTHER ORDERED that the September 3, 1982 stay of the bankruptcy court be dissolved.